**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION at COVINGTON**

**[Filed Electronically]**

| | |
|---|---|
| **JENNIFER HALL, individually** | ) |
| | ) |
| **-and-** | ) |
| | ) |
| **DANIEL POWERS, individually and as** | ) |
| **Administrator of the Estate of Serenity** | ) |
| **Renee Powers, deceased,** | ) |
| | ) |
|       **PLAINTIFFS** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **KENTON COUNTY, KENTUCKY** | ) |
| **Serve:**    **Kris Knochelmann** | ) |
|           **County Judge-Executive** | ) |
|           **303 Court Street** | )  **Case No. \_\_:19-cv-_____** |
|           **Covington, KY 41011** | ) |
| | ) |
| **-and-** | ) |
| | ) |
| **TERRY CARL, individually** | ) |
| **Serve:**    **Kenton County D.C.** | ) |
|           **Kenton County Jailer** | ) |
|           **3000 Decker Crane Lane** | ) |
|           **Covington, KY 41017** | ) |
| | ) |
| **-and-** | ) |
| | ) |
| **CARRIE RAY, individually** | ) |
| **Serve:**    **Kenton County D.C.** | ) |
|           **3000 Decker Crane Lane** | ) |
|           **Covington, KY 41017** | ) |
| | ) |
| **-and-** | ) |
| | ) |
| **SOUTHERN HEALTH PARTNERS, INC.** | ) |
| **Serve:**    **CT Corporation System** | ) |
|           **4169 Westport Road** | ) |
|           **Louisville, KY  40207** | ) |

-and-                                )
                                     )
**MARK SCHAFFIELD, MD, individually**    )
Serve:        **7945 Hopper Rd.**        )
              **Cincinnati OH 45255**    )
                                     )
-and-                                )
                                     )
**SHAWNEE THOMAN, RN, individually**     )
Serve:        **Kenton County D.C.**     )
              **3000 Decker Crane Lane** )
              **Covington, KY 41017**    )
                                     )
-and-                                )
                                     )
**LaSHAE SETTERS, LPN, individually**    )
Serve:        **Kenton County D.C.**     )
              **3000 Decker Crane Lane** )
              **Covington, KY 41017**    )
                                     )
       **DEFENDANTS.**                )

# COMPLAINT

## I. Introduction

1.    Plaintiffs Jennifer Hall, individually, and Daniel Powers, individually and as the Administrator of the Estate of Serenity Renee Powers (the "Baby"), complain of Defendants' negligence, gross negligence, recklessness, and deliberate indifference in their dealings with Jennifer and her unborn but viable baby, Serenity, during Jennifer's incarceration in the Kenton County Detention Center ("the Jail") in May 2018.  Defendants' misconduct, described below, caused Serenity's death, Jennifer's wanton and unnecessary physical pain and suffering, past and future, and Daniel and Jennifer's mental pain and suffering and loss of consortium, past and future. It is the purpose of this action to recover not just the actual damages Plaintiffs and Serenity's estate have suffered as a result of Defendants' conduct, but punitive damages to punish Defendants' conduct and forever deter its repetition.

2

## II.  Jurisdiction and Venue

2.     Plaintiffs and Serenity's estate seek damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. §1983, for gross and unconscionable violations of the rights, privileges and immunities guaranteed Jennifer and Serenity by the Eighth and Fourteenth Amendments to the Constitution of the United States.  Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 38 U.S.C. §§1331 and 1343.  Plaintiffs and Serenity's estate also seek to recover damages under the supplemental jurisdiction of this Court on their state claims of negligence, gross negligence, and loss of consortium.  Kenton County, Kentucky is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

## III.  Parties

3.     Jennifer and Daniel both reside in Kenton County, Kentucky.

4.     Daniel was appointed the Administrator of Serenity's estate by order of the Kenton District Court on February 27, 2019.

5.     Defendant Kenton County, Kentucky, at all times mentioned herein, employed, was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the officers, employees and independent contractors at the Jail.

6.     Defendant Carl was at all times mentioned herein acting individually as the Kenton County Jailer, and as such established policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the officers, employees and independent contractors at the Jail.

7.     Defendant Ray was at all times mentioned herein a Sergeant at the Jail, and as such established policies either formally or by custom for, and was responsible for the employment,

3

training, supervision and conduct of, the officers, employees and independent contractors at the Jail, and personally and directly participated in the mistreatment of Jennifer and Serenity described below.

8.    Defendant Southern Health Partners, Inc. ("SHP") at all times mentioned herein employed, was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the medical professionals responsible for the inmates in the Jail, including Defendants Mark Schaffield, MD, registered nurse ("RN") Shawnee Thoman, and licensed practical nurse ("LPN") LaShae Setters.

9.    Defendants Schaffield, Thoman and Setters were at all times mentioned herein medical professionals employed or separately contracted by SHP to work at the Jail, and personally participated in the mistreatment of Jennifer and Serenity described below.  In addition, Defendant Schaffield, as the Jail's doctor, was responsible for the establishment of policies either formally or by custom for, and was responsible for the training, supervision and conduct of, Defendants Thoman and Setters.  Finally, RN Thoman was responsible for the establishment of policies either formally or by custom for, and was responsible for the training, supervision and conduct of, LPN Setters.

### IV.  Nature of Defendants' Conduct

10.    Defendants, individually and in conspiracy with one another, engaged in the conduct described below under color of the law of the Commonwealth of Kentucky and Kenton County.  The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below.  The offenses described below resulted from Kenton County's and SHP's failure to employ qualified persons for positions of authority, and/or to properly or conscientiously train and supervise the

conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures either formally or by custom and practice to protect the constitutional rights of inmates, like Jennifer, and their unborn but viable babies, like Serenity.  Defendants' conduct was objectively unreasonable, intentional and/or grossly negligent, and/or indicated active malice towards Jennifer and Serenity, and a total, deliberate and reckless disregard for and indifference to their lives and to their constitutional and common law rights, and justifies an award of punitive damages in addition to the actual damages Plaintiffs and Serenity's estate are entitled to recover.

### V.  Facts

11.     There is nothing in Western Civilization more sacrosanct than the health and well-being of an expectant mother and her unborn but viable baby.

12.     Jennifer was a 30-year old expectant mother when she entered the Jail on April 19th, 2018.  Jennifer, though, had an opioid addiction and was being treated with Methadone pending delivery of her baby, Serenity.  Jennifer was treated with Methadone prior to entering the Jail, and and for a period of time following her admission to the Jail.  It has long been the standard of care to treat pregnant women with an opioid addiction with Methadone during their pregnancy. Serenity was viable and was expected to enter the world on June 2, 2018.

13.     Jennifer's clinical visits through the first month of her incarceration at the Jail showed that her pregnancy was progressing normally, and that Serenity had a normal heartbeat and was active in the womb.

14.     Jennifer, however, had to be transported regularly to an outside methadone clinic for methadone treatment.

15.     On or about May 25, 2018, just one week shy of Serenity's estimated delivery date, Defendants Kenton County, Carl and Ray ("the Kenton County Defendants") decided that the Jail should no longer bear the expense and inconvenience of transporting methadone-dependent pregnant inmates to a methadone clinic for treatment.  Independently or at the direction of the Kenton County Defendants, Defendant Schaffield ordered that the Jail's methadone-dependent pregnant inmates be taken off Methadone cold turkey and placed on Buprenorphine.  In particular, Defendant Schaffield ordered Defendant Thoman to replace Jennifer's daily dose of Methadone with a 16 mg daily dose of Buprenorphine starting on May 28.

16.     Opioid-addicted pregnant women can be treated with Buprenophine instead of Methadone.  But an abrupt *switch* from Methadone to Buprenorphine triggers withdrawal in not only the mother, but the baby ("neonatal abstinence syndrome").

17.     Guidelines of the Food and Drug Administration state: "*Because of the partial agonist properties of buprenorphine, [it] may precipitate opioid withdrawal signs and symptoms in individuals physically dependent on full opioid agonists if administered sublingually or parenterally before the agonist effects of other opioids have subsided.*"  As a consequence, a switch from Methadone to Buprenorphine is usually accomplished by first weaning the patient off Methadone, followed by a 3-10 day period of abstinence, before initiating Buprenorphine with a daily dose of not more than 4 mg.

18.     Defendant's decisions, actions and/or inactions were in violation of the professional standards of care for treating opioid-addicted pregnant women on Methadone therapy and 201 KAR 9:270, including but not limited to:

   a) Their failure to obtain a complete and appropriate evaluation and examination of Jennifer and Serenity;

6

b)  Their failure to obtain Jennifer's consent and authorizations in order to obtain Jennifer and Serenity's prior medical records;

c)  Their failure to review a KASPER report for Jennifer for the twelve-months prior;

d)  Their failure to explain treatment alternatives and the risks and benefits of treatment with Buprenorphine;

e)  Their failure to obtain written consent from Jennifer in a manner that meets professional standards;

f)  Their failure to obtain and document consultation with another physician, who is qualified to prescribe Buprenorphine, as to whether the potential benefit of Buprenorphine use outweighs the potential risk of use;

g)  Their failure to provide counseling as to the risk of neonatal abstinence syndrome which shall be consistent with patient education material on neonatal abstinence syndrome;

h)  Their failure to monitor Jennifer for signs of withdrawal; and

i)  Their failure to first wean Jennifer off of Methadone, followed by a 3-10 day period of abstinence, followed by administration of an initial dose of Buprenorphine not to exceed four (4) milligrams.

19.    Defendants Schaffield, Setters and Thoman are not specialists in obstetrics or addiction medicine.  Before Jennifer's medication was changed, the standard of care required them to consult with physicians certified in obstetrics, psychiatry or addiction medicine, but they did not.

20.    The decision of Defendant Schaffield to switch Jennifer's medication just a week shy of Serenity's expected due date, Defendant Thoman's assent to such a change, and the implementation of such a change just five days before Serenity's birthdate, was medically unnecessary and unconscionable.

21.    When the Jail's methadone-dependent pregnant inmates were informed of the impending change, one, Erica Brumley, refused to accept the change without first speaking with a doctor.  At Defendant Ray's direction, Erica was taken to "the hole" as punishment, where the

other methadone-dependent pregnant inmates knew she would be placed in a cell by herself, and forced to sleep on a hard-concrete floor and ask for water, which could complicate her pregnancy.

22. Jennifer was assured by Defendants that the appropriate medical experts had been consulted and that the change would not hurt Serenity. Jennifer also saw what happened to Erica when she objected to the change of medication. Jennifer knew Serenity was fully viable and that her birth was imminent, relied on the Defendants representations on switching medication and feared the repercussions if she refused to comply.

23. Defendants Schaffield, Thoman and Setters further violated the standard of care by failing to put into place an effective system for monitoring Jennifer for signs of withdrawal or Serenity for signs of neonatal abstinence syndrome. After the time of the first dose of Buprenorphine, no-one at the Kenton County Jail monitored the withdrawal symptoms of Jennifer or the health and well-being of Serenity.

24. Tragically, the change in Jennifer's medication on May 28 immediately precipitated withdrawal. At 7:48 am on May 29, 2018, when Defendant Setters attempted to administer to Jennifer only her second dose of Buprenorphine, she vomited it back up. Defendant Setters, in violation of the standard of care applicable to her position, did not contact Defendant Schaffield in response to these clear signs of withdrawal and the potential for fetal distress. At 1:53 pm that afternoon, Jennifer returned to the Jail's medical clinic, where she reported to Defendant Setters that she was in labor, was suffering pain in her low back and abdomen, and was experiencing pressure in her vagina. Only then did Defendant Setters direct that Jennifer be transported to St. Elizabeth Hospital for further assessment.

25. Defendant Setters did not contact Defendant Schaffield about what was happening to Jennifer on May 29 until *after* she had directed that Jennifer be taken to the Hospital.

8

26.    By the time Jennifer arrived at the Hospital, Serenity was dead.  Serenity's death was caused entirely by Defendants' decision to take Jennifer off Methadone cold turkey and immediately administer Buprenorphine in violation of the standard of care, 201 KAR 9:270, and despite methadone-dependent pregnant inmates' expressions of concern about such change.

### VI. Causes of Action

### Count I

27.    Defendants' conduct violated the standard of care and just plain common sense; was objectively unreasonable, intentional, reckless, deliberate, wanton and/or malicious; and was indicative of their total, deliberate and reckless disregard of and indifference to the lives of Jennifer and Serenity, as well as the risk of harm to them occasioned by such conduct.

28.    Plaintiffs and Serenity's estate believe that reasonable discovery will show that the treatment of Jennifer and Serenity by Defendants was the result of customs and practices of Defendants that were contrary to or expressly violated not only the standard of care, but written policies, procedures and protocols of SHP and/or the Jail, and that such customs and practices were the "moving force" behind Plaintiffs' and Serenity's injuries.  Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of pregnant inmates at the Jail in general and methadone-dependent pregnant inmates in particular, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

29.    As a result of the foregoing, Jennifer and Serenity, through Defendants' objectively unreasonable, deliberate indifferent and grossly negligent -- if not reckless, intentional and/or malicious -- conduct, were subjected to cruel and unusual punishment and denied due process of

9

law in violation of the Eighth and Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. §1983.

### Count II

30.     Defendants' conduct also violated 201 KAR 9:270 and KRS 311.597, as it departed from and failed to conform to the standards of acceptable and prevailing medical practice within the Commonwealth of Kentucky.  The violation of acceptable and prevailing standards of care and Kentucky law was a substantial factor in causing, and directly and proximately caused, Jennifer and Daniel's damages and Serenity's death.  Pursuant to KRS § 446.070, Plaintiffs and Serenity's estate are entitled to recover from Defendants all damages sustained by reason of such violations.

### Count III

31.     By virtue of the foregoing, all Defendants were negligent and grossly negligent, and Defendants SHP, Schaffield, Thoman and Setters failed to satisfy the applicable standard of care.  Defendant SHP is responsible for its employees' negligence and gross negligence pursuant to the doctrines of *respondeat superior* and vicarious liability.

### VII.  Damages

32.     Serenity's death was unnecessary and preventable, and her estate is therefore entitled to recover the income and earnings she would have enjoyed had she lived.  Because Serenity was fully viable at the time of her death,  she also experienced wanton and unnecessary mental and physical pain and suffering as a result of Defendants' misconduct, for which her estate is entitled to recover damages pursuant to KRS 411.130.

33.     Jennifer experienced wanton and unnecessary mental and physical pain and suffering as a result of Defendants' misconduct, for which she is entitled to recover damages.

34.    Jennifer and Daniel are entitled to recover damages for the loss of Serenity's love, society and companionship they would have enjoyed had she lived pursuant to KRS 411.135.

35.    Jennifer and Daniel are also entitled to recover all expenses incurred in the funeral and burial of Serenity.

36.    Finally, Defendants' violations of the constitutional and common law rights of Jennifer and Serenity were cruel, willful, malicious, and/or grossly negligent and evinced a total and reckless disregard for their lives, entitling Plaintiffs and Serenity's estate to recover punitive damages from Defendants in order to deter such conduct in the future.

WHEREFORE, Plaintiffs and Serenity's estate respectfully request a trial by jury, and that they be awarded all actual and punitive damages requested herein; their costs, attorneys' fees and pre- and post-judgment interest on all sums awarded; and all other relief to which they are entitled under law or in equity.

Respectfully submitted,

/s/ Gregory A. Belzley
Gregory A. Belzley
gbelzley@aol.com
Camille A. Bathurst
camillebathurst@aol.com
Aaron Bentley
abentley3b@gmail.com
Belzley, Bathurst & Bentley
P.O. Box 278
Prospect, KY  40059
502/292-2452

Nicholas Summe
nsummelaw@gmail.com
Martin Summe
summemlaw@gmail.com
Summe & Summe, PSC
19 West 11th Street
Covington, Kentucky 41011

11

859/491-2593 (Phone)
859/479-0188 (FAX)

**Counsel for Plaintiffs and the Estate**